Eberhard SAMLOWSKI, M.D., Petitioner,

v.

Carol WOOTEN, Respondent.

No. 08–0667.

Supreme Court of Texas.

Argued Nov. 18, 2009.

Decided Feb. 25, 2011.

Rehearing Denied April 1, 2011.

Kay E. Ellington, Law Office of Kay E. Ellington, P.C., Dallas, for Eberhard Samlowski,

Barney L. McCoy, Michael W. Cramer, The Cramer Law Firm, Houston, for Carol Wooten.

Justice MEDINA announced the judgment of the Court and delivered an opinion in which Chief Justice JEFFERSON and Justice HECHT joined.

Texas Civil Practice and Remedies Code section 74.351 requires that a trial court

dismiss a health care liability claim unless the claimant serves an expert report within 120 days after filing suit. TEX. CIV. PRAC. & REM.CODE § 74.351(b). This dismissal requirement is subject to the trial court's discretion to grant one thirty-day extension for the claimant to cure a timely served but deficient report. *Id.* § 74.351(c). The trial court in this health care liability case determined that claimant's timely served report was deficient and dismissed her suit without granting her request for an extension of time to cure the report. The court of appeals agreed the report was deficient but concluded the trial court abused its discretion by denying the requested extension. 282 S.W.3d 82, 91.

We granted the petition to consider under what circumstances a trial court might abuse its discretion when denying such an extension. Like most cases involving trial court discretion, a single rule will not fit every situation, but generally a trial court should grant an extension when the deficient report can be cured within the thirty-day period the statute permits. The court of appeals concluded, among other things, that the case should be remanded to the trial court for further proceedings, and a majority of the Court agrees with that judgment. There is no majority reasoning for why we remand, however. Three members of the Court essentially agree with the court of appeals' analysis, three members disagree with that analysis and would reverse and render, and three members disagree with the court of appeals' analysis but would nevertheless remand in the interests of justice. I am in this last group.

Because the record does not establish that the deficient expert report would have been cured if the extension had been granted in this case, I cannot say that the trial court abused its discretion in denying the extension. Although I disagree with the court of appeals' analysis of the statute and its application of the abuse of discretion standard, I conclude that the interests of justice require a remand to the trial court in this case. Accordingly, I would affirm the court of appeals' judgment remanding this cause as modified by this opinion.

I

Carol Wooten was admitted to Walls Regional Hospital in Cleburne, complaining of severe abdominal pain. Dr. Eberhard Samlowski assumed Wooten's primary care and two days later performed laparascopic gall bladder surgery. The surgery failed to relieve Wooten's pain. Following additional tests and a consult recommending further surgery to explore the abdomen, Dr. Samlowski performed an exploratory laparotomy that revealed a complete bowel obstruction with perforations in the pelvic region. Dr. Samlowski attempted to repair the perforations and adhesions he found during this surgery.

Postoperative complications resulted in Wooten's transfer to Hughley Memorial Medical Center in Fort Worth. Her admission diagnosis there included postoperative cholecystectomy and repair of bowel perforation, sepsis syndrome, acute respiratory distress syndrome, renal insufficiency/failure, acute blood loss anemia, respiratory failure, type 2 diabetes mellitus, and sarcoidosis. Four additional surgical procedures were performed on Wooten at Hughley where she remained for over sixty days.

Wooten subsequently sued Dr. Samlowski for medical negligence, serving Dr. R. Don Patman's expert report 105 days la-

ter.[1] In this report, Dr. Patman discusses the standard of care and several instances where Dr. Samlowski's care fell short. In Dr. Patman's opinion, the patient's lab results, complaints, and history did not indicate the need for gall bladder surgery. Instead, Dr. Patman states that Dr. Samlowski should have performed additional tests to discover the actual cause of the patient's acute abdominal pain—a complete pelvic bowel obstruction with several areas of necrosis and perforation. Regarding causation, Dr. Patman concludes that Dr. Samlowski's inaccurate diagnosis and incomplete preoperative evaluation proximately caused the patient's subsequent complications and prolonged hospitalization, and that in all likelihood the patient would require future treatment and additional surgery.

Dr. Samlowski promptly filed a motion challenging the report as "wholly deficient in providing any expert opinions regarding specifically how the care [he] rendered ... proximately caused the injury, harm, or damages claimed." Dr. Samlowski subsequently filed a motion to dismiss after the statutory deadline for serving expert reports had passed. Wooten responded to both motions, arguing that her expert report was sufficient, but also asking for a thirty-day extension to cure the report, if the trial court found it deficient.

The trial court heard the motions and a few days later signed an order dismissing Wooten's case. No record was made at the hearing. The court's order expressly granted both of Dr. Samlowski's motions but did not mention Wooten's request for a thirty-day extension to cure. The court's order, however, disposed of Wooten's pending motion by reciting that all relief not expressly granted was denied. Wooten appealed.

A divided court of appeals reversed and remanded with directions that Wooten be granted a thirty-day extension. 282 S.W.3d 82, 91. Although the court agreed that the expert report was deficient, it nevertheless concluded that the trial court had abused its discretion[2] by not giving Wooten additional time to cure that deficiency. *Id.* at 90–91. The report was deficient, according to the court of appeals, because it did "not represent a good-faith effort to summarize the causal relationship between Dr. Samlowski's failures to meet the applicable standards of care and Wooten's claimed injury, harm, and damages." *Id.* at 90 (citing Tex. Civ. Prac. & Rem.Code § 74.351(r)(6)). But the court concluded that the trial court should have given Woo-

1. Dr. Patman is a board-certified general and vascular surgeon and Clinical Assistant Professor of Surgery at the University of Texas Southwestern Medical School and Attending Surgeon at Baylor University Medical Center in Dallas.

2. In *Walker v. Gutierrez,* we held that a trial court's denial of an extension to cure an expert report under former Section 13.01(g) of the Medical Liability and Insurance Improvement Act, Texas Revised Civil Statute art. 4590i, was to be reviewed for abuse of discretion. 111 S.W.3d 56, 62 (Tex.2003). The procedures in former section 13.01 and section 74.351 for serving expert reports and granting extensions of time to correct deficiencies are similar, although the require-

ments and deadlines are not exactly the same. The former statute required, and current statute requires, dismissal of the suit in the event a timely expert report is not served. *See* Tex Civ. Prac. & Rem.Code § 74.351(b); former Tex. Civ. Stat. art. 4590i § 13.01(e). The former statute authorized the trial court, under certain circumstances, to grant extra time to meet the statutory requirements. *See* former Tex.Rev.Civ. Stat. art. 4590i § 13.01(g). So does the current statute. *See* Tex. Civ. Prac. & Rem.Code § 74.351(c). Given the structural and substantive similarities between section 74.351 and former section 13.01, the abuse of discretion standard likewise applies to a trial court's decision to deny an extension of time under section 74.351(c).

ten additional time to cure that deficiency because the expert report was a "good-faith attempt" to comply with the statute that could easily be cured with a supplemental report. *Id.* at 91. A dissent argued that the trial court had not abused its discretion in dismissing the underlying lawsuit because the report was not "an objective good faith effort to comply with the [statutory] definition of an expert report." *Id.* at 93 (Gray, C.J. dissenting).

## II

Dr. Samlowski's argument here is similar to the dissent in the court of appeals. He complains the court's concession that Wooten's expert report was not a "good faith effort" conflicts with its abuse-of-discretion holding and submits that the former negates the latter. He further submits that the court of appeals' characterization of the report as a "good faith attempt" is a meaningless distinction through which the court has merely substituted its judgment for that of the trial court. Dr. Samlowski thus views a good faith effort in producing an expert report as the predicate for the trial court's discretion under section 74.351(c).

Wooten, on the other hand, argues that trial court discretion under section 74.351(c) should be judged by the relative good faith exhibited in a deficient expert report. The court of appeals' opinion similarly adopts this view, suggesting that the deficiency in Dr. Patman's report was too small to permit the denial of Wooten's

motion to cure. 282 S.W.3d at 90. Wooten concludes that the court of appeals' judgment should be affirmed because a fair reading of Dr. Patman's report shows that her claim has merit and the report's defect easily cured.[3]

Neither party's argument proposes a reasonable scheme for the exercise or review of the trial court's discretion under section 74.351(c). Dr. Samlowski's argument suggests that trial court discretion in this instance is absolute, while Wooten's indicates that appellate review is not for abuse of discretion, but de novo. Both arguments are based on a similar faulty premise: that trial court discretion under section 74.351(c) should be measured or controlled by some notion of good faith. Good faith, however, is not mentioned in section 74.351(c).

Subsection (c) merely states that "the court may grant one 30–day extension" if elements of the expert report are deficient. TEX. CIV. PRAC. & REM.CODE § 74.351(c).[4] The term "good faith" is used in the statute, but it appears in a later provision discussing motions that challenge "the adequacy of the expert report." *Id.* § 74.351(*l*). Subsection (*l*) states that "[a] court shall grant a motion challenging the adequacy of an expert report [when] the report does not represent an objective *good faith* effort to comply with the definition of an expert report[.]" TEX. CIV. PRAC. & REM.CODE § 74.351(*l*) (emphasis added).

■ We have explained that a "good faith effort" in this context simply means a

---

3. Wooten also argued in the court of appeals and in her brief to this Court that Dr. Patman's report was sufficient, but at oral argument she conceded that the report was deficient.

4. Section 74.351(c) provides in full:

(c) If an expert report has not been served within the period specified by Subsection (a) because elements of the report are found

deficient, the court may grant one 30–day extension to the claimant in order to cure the deficiency. If the claimant does not receive notice of the court's ruling granting the extension until after the 120–day deadline has passed, then the 30–day extension shall run from the date the plaintiff first received the notice.

TEX. CIV. PRAC. & REM.CODE § 74.351(c).

report that does not contain a material deficiency. Therefore, an expert report that includes all the required elements, *Jernigan v. Langley*, 195 S.W.3d 91, 94 (Tex.2006), and that explains their connection to the defendant's conduct in a non-conclusory fashion, *Bowie Memorial Hospital v. Wright*, 79 S.W.3d 48, 53 (Tex. 2002), is a good faith effort. In contrast, a report that omits an element or states the expert's opinions in conclusory form is not a good faith effort. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 879 (Tex.2001). Under these cases, a "good faith effort" will produce an adequate expert report for which no extension under section 74.351(c) is needed. A deficient expert report then is the predicate for the exercise of the trial court's discretion under section 74.351(c), and not, as Dr. Samlowski suggests, proof that the trial court decided the matter correctly.

■ Dr. Samlowski's complaint that the court of appeals has merely substituted its judgment for that of the trial court, however, is more troubling. The court of appeals described Dr. Patman's report as "thorough, well-detailed, and—except for one small and easily curable deficiency—patently and sufficiently specific." 282 S.W.3d at 90. But the underlying merit of Wooten's claim and the relative ease of curing Dr. Patman's report are matters in dispute. It is not enough that the court of appeals would have decided the dispute differently because the abuse of discretion standard generally "insulates the trial judge's reasonable choice from appellate second guessing." W. Wendell Hall, *Standards of Review in Texas*, 38 ST. MARY'S L.J. 47, 62 (2006). As we have said, "to find an abuse of discretion [when factual matters are in dispute], the reviewing court must conclude that the facts and circumstances of the case extinguish any discretion in the matter." *Johnson v.*

*Fourth Court of Appeals*, 700 S.W.2d 916, 918 (Tex.1985).

■ A trial court therefore abuses its discretion when it renders an arbitrary and unreasonable decision lacking support in the facts or circumstances of the case. *Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex.1997). Similarly, a trial court abuses its discretion when it acts in an arbitrary or unreasonable manner without reference to guiding rules or principles. *Mercedes–Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex.1996) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex.1985)). Section 74.351(c)'s text, however, provides no particular guidance on how the court should exercise its discretion, stating merely that "the court may grant one 30–day extension to the claimant in order to cure [a timely but deficient report]." *See* TEX. CIV. PRAC. & REM.CODE § 74.351(c). Guidance must come instead from the broader purposes of the Texas Medical Liability Act of which section 74.351(c) is a part.

## III

■ A core purpose of this legislation was to identify and eliminate frivolous health care liability claims expeditiously, while preserving those of potential merit. Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.11(b)(1), (3), 2003 Tex. Gen. Laws 847, 884 (seeking to reduce frivolous claims but "in a manner that will not unduly restrict a claimant's rights any more than necessary to deal with the crisis"); *see also Leland v. Brandal*, 257 S.W.3d 204, 208 (Tex.2008) (noting that in "section 74.351, Legislature struck a careful balance between eradicating frivolous claims and preserving meritorious ones"). To further this goal, the statute sets a deadline for the claimant to substantiate the underlying health care liability claim with expert reports.

The claimant is required to serve each defendant physician or other health care provider with an expert report within 120 days of filing suit. TEX. CIV. PRAC. & REM. CODE § 74.351(a). This report must provide a fair summary of the expert's opinions "regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." *Id.* § 74.351(r)(6). If the report is deficient, it may be challenged, and a deficient report may likewise lead to dismissal. *Id.* § 74.351(a), (b) & (*l*). But a deficient report does not invariably require dismissal of the underlying health care liability claim. The statute incorporates a significant exception "explicitly giv[ing] trial courts discretion to grant a thirty day extension so that parties may, where possible, cure deficient reports." *Ogletree v. Matthews,* 262 S.W.3d 316, 320 (Tex.2007) (citing TEX. CIV. PRAC. & REM.CODE § 74.351(c)).

 The overriding principle guiding trial court discretion under section 74.351(c) then is the elimination of frivolous claims and the preservation of meritorious ones. An adequate expert report is how the statute distinguishes between the two. A trial court should therefore grant an extension when a deficient expert report can readily be cured and deny the extension when it cannot. In making that determination, a trial court may sometimes err and dismiss a claim when the report could have been cured. A reasonable error in judgment, however, is not an abuse of discretion. *See Walker v. Packer,* 827 S.W.2d 833, 839–40 (Tex.1992) (noting that reviewing court may not substitute its judgment as to factual matters committed to trial court's discretion).

 Wooten has conceded in this Court that her report was deficient but maintains that she was entitled to an extension because her expert report could easily have been cured. The court of appeals agreed, but this is only the court's best judgment in the matter. The record does not establish that the deficient report *would* have been cured if the extension had been granted, and a claimant's mere assertion or belief that it *could* have been cured with an extension of time does not demonstrate an abuse of discretion under section 74.351(c). When the trial court denies a motion to cure, the claimant must make a record that demonstrates the deficiency would have been cured.

 The claimant must therefore be prepared to cure a deficient expert report whether or not the trial court grants the claimant's motion. When, as in this case, the trial court simultaneously finds the expert report deficient, denies a motion to cure, and dismisses the underlying health care liability claim, the claimant must move the court to reconsider and promptly fix any problems with the report. This should further be done within the statutory, thirty-day period, thereby demonstrating that the report would have been cured had the extension been granted. If this is accomplished and the court refuses to reconsider, the now compliant report will typically establish the trial court's abuse of discretion. Wooten didn't make such a record in the trial court, and thus we are left to speculate about whether she could have cured her expert report with an extension.

## IV

I, however, agree with Justice Guzman's view that "trial courts should err on the side of granting claimants' extensions to show the merits of their claims." 332 S.W.3d at 416. The right answer in many

cases will be for the trial court to grant one thirty-day extension upon timely request and be done with it. Justice Guzman agrees that this report was deficient, but good enough to warrant an extension, and again I do not disagree.

The statute, however, grants the trial court discretion in the matter, and Justice Guzman's analysis appears to be no different from that of the court of appeals, which I view as merely a substitution of the appellate court's discretion for that of the trial court. Under her analysis, it remains unclear how we are to distinguish between deficient reports that demonstrate merit and deficient reports that do not, other than by Justice Potter Stewart's famous maxim: "I know it when I see it." *Jacobellis v. Ohio,* 378 U.S. 184, 197, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964) (Stewart, J. concurring) (stating his test for determining hard-core pornography outside the bounds of constitutional protection). Because the expert report was deficient as served, I cannot agree unequivocally that the trial court abused its discretion when denying the motion to cure. *See* Tex. Civ. Prac. & Rem.Code § 74.351(b) (stating that if an expert report has not been served, the court shall, subject to the court's discretionary power to grant one 30–day extension, dismiss the claim).

## V

Although the record in this case does not clearly indicate that the trial court abused its discretion, Dr. Patman's report is largely as described by the court of appeals—"thorough and well-detailed." 282 S.W.3d at 90. The court of appeals was plainly concerned about whether justice had been done in the trial court. And although the claimant did not follow the procedure I set out in this opinion, I too am not unsympathetic. A claim is not typically saved by doing precisely what the trial court has refused permission to do.

But when a motion to cure under section 74.351(c) is denied, the claimant must act to correct any problems with the expert report in a timely manner to demonstrate an abuse of discretion.

The statute, however, does not express the procedure I have outlined today. Because the statute is silent on the principles and procedure that should control the trial court's discretion in this area and the arguments of the parties unfocused as a result, I conclude that the interests of justice will best be served by a remand to the trial court. *See, e.g., Low v. Henry,* 221 S.W.3d 609, 621 (Tex.2007) (remanding "to allow the parties to present evidence responsive to our [new] guidelines"); *Humble Sand & Gravel, Inc. v. Gomez,* 146 S.W.3d 170, 195 (Tex.2004) ("Because the parties have not focused on the issue we think is crucial, we conclude that the interests of justice would be best served by a new trial.").

\* \* \*

The court of appeals' judgment is modified to reflect a remand to the trial court for further proceedings, and the court's judgment, as modified, is affirmed.

Justice GUZMAN filed an opinion concurring in the judgment in which Justice LEHRMANN joined and in Parts I & II.B of which Justice WAINWRIGHT joined.

Justice WAINWRIGHT filed an opinion dissenting in part and concurring in the judgment.

Justice JOHNSON filed a dissenting opinion in which Justice GREEN and Justice WILLETT joined.

Justice GUZMAN, joined by Justice LEHRMANN, and by Justice WAINWRIGHT as to Parts I and II–B, concurring.

I agree with the Court that the proper disposition is to remand this case to the

trial court for further proceedings; accordingly, I join the Court's judgment. However, I do not join Justice Medina's opinion because I disagree with the new procedure Justice Medina sets out to challenge a trial court's failure to grant a thirty-day extension to cure. Additionally, I disagree with Justice Medina's conclusion that the trial court did not abuse its discretion.

## I. Procedural Issues

At issue in this case is whether the trial court abused its discretion by denying Carol Wooten a thirty-day extension to cure her inadequate expert report. *See* TEX. CIV. PRAC. & REM.CODE § 74.351(c). Justice Medina holds the trial court did not abuse its discretion, but then proceeds into new territory to address the manner in which a claimant must challenge a trial court's denial of a motion to cure. Justice Medina concludes that when a trial court finds an expert report inadequate and denies a motion to cure, the claimant "*must* move the court to reconsider and promptly fix any problems." 332 S.W.3d at 411 (emphasis added). Justice Medina states that a subsequently filed compliant report will demonstrate the trial court abused its discretion by failing to grant the extension. *Id.* Justice Medina's approach thus establishes a new procedure for challenging the denial of a motion to cure.

But rules already exist governing the manner in which a person may challenge the trial court's denial of a motion to cure, *see, e.g.,* TEX. CIV. PRAC. & REM.CODE § 74.351(c); TEX.R. CIV. P. 329b (establishing timeline for filing certain motions); TEX.R.APP. P. 26.1 (establishing timeline for perfecting appeal), and it is unclear how these rules intersect with the procedure created in Justice Medina's opinion. For example, what if a plaintiff believes the initially-served report is not deficient and seeks to challenge the trial court's finding on that issue as well as the failure to grant an extension, as Carol Wooten did in this case? Is that plaintiff also required to submit a new report and, if so, would that action waive the plaintiff's complaint that the initial report was not deficient? Additionally, when a claimant files a new report after the trial court has denied a motion for extension, what happens if a trial court declines to timely set a motion for reconsideration for hearing? Is a claimant then required to challenge the trial court's failure to set the motion for a hearing, further delaying resolution of the question of whether the trial court erroneously denied the extension in the first place? Or must the court of appeals consider whether the amended report is sufficient to establish the trial court abused its discretion in denying an extension? Justice Medina also does not address when the appellate deadlines begin to run—whether from the time the trial court signs the order of dismissal or, because a claimant must move the court to reconsider, from the denial of a motion to reconsider. Nor does Justice Medina consider whether this deadline is different if a claimant chooses not to file an amended report, but to stand on the initial report filed.

Aside from the procedural questions raised, Justice Medina erroneously concludes that an amended report filed *after* the trial court has denied a motion for extension will "typically establish the trial court's abuse of discretion." 332 S.W.3d at 411. It is well-established that a reviewing court is to determine whether a trial court abused its discretion based on the record before the trial court at the time the decision was made. *Univ. of Tex. v. Morris,* 162 Tex. 60, 344 S.W.2d 426, 429 (1961); *see Owens–Corning Fiberglas Corp. v. Malone,* 972 S.W.2d 35, 52 n. 7 (Tex.1998). I believe, based on this principle and the purposes of the expert report requirement and the thirty-day extension

to cure, that rather than considering an amended report submitted after the trial court has denied an extension, a reviewing court should analyze whether a trial court abused its discretion based on the expert report initially submitted.

## II. Abuse of Discretion

### A. Discretion in Reviewing Expert Reports

If a trial court finds an expert report deficient, it "may" grant one thirty-day extension to cure the report. TEX. CIV. PRAC. & REM.CODE § 74.351(c). This statutory authority is couched in permissive terms, but it is not unfettered. *See In re Pirelli Tire, L.L.C.,* 247 S.W.3d 670, 676 (Tex.2007) (orig. proceeding). While "may" gives a trial court discretion, discretionary decisions must not be arbitrary or unreasonable and must be made with reference to guiding principles. *Id.* (citing *Goode v. Shoukfeh,* 943 S.W.2d 441, 446 (Tex.1997)); *Womack v. Berry,* 156 Tex. 44, 291 S.W.2d 677, 683 (1956) (orig. proceeding) (noting that use of the permissive word "may" does not vest a court with unlimited discretion, but requires a trial court to exercise that discretion within "limits created by the circumstances of the particular case"). The principles that are to guide a trial court's discretionary decision are determined by the purposes of the rule at issue. *See In re Van Waters & Rogers, Inc.,* 145 S.W.3d 203, 207 (Tex. 2004) (orig. proceeding); *Womack,* 291 S.W.2d at 683. Justice Medina acknowledges this and looks to the "broader purposes" of the Texas Medical Liability Act (TMLA) to determine the principles that should guide a trial court's determination of whether to grant an extension. 332 S.W.3d at 410. But the purpose of the actual rule permitting a trial court to grant an extension must also be considered. *See* TEX. CIV. PRAC. & REM.CODE § 74.351(c).

### B. Scope of the Trial Court's Review

One stated purpose of section 74.351 is to "reduce excessive frequency and severity of health care liability claims." *Leland v. Brandal,* 257 S.W.3d 204, 208 (Tex.2008) (quoting Act of June 2, 2003, 78th Leg., R. S., ch. 204, § 10.11(b)(1), 2003 Tex. Gen. Laws 847, 884). The expert report requirement helps accomplish this purpose by providing a basis for the trial court to determine a claim has merit. *Id.* at 206–07. Justice Medina and the dissent both conclude that factors other than the report should be considered to determine whether the trial court abused its discretion by denying an extension. But if one purpose of the report is to inform the trial court of the merits of a claim, then the purpose of an extension is to provide a claimant the opportunity to amend a report to a point that would allow the trial court to make that determination. We have previously held that a trial court should look no further than the four corners of an expert report when considering a motion challenging the adequacy of the report because all the information relevant to that inquiry is contained within the report. *See Bowie Mem'l Hosp. v. Wright,* 79 S.W.3d 48, 52 (Tex.2002). Section 74.351(*l*) does not explicitly state that a trial court may not look beyond the report to determine adequacy, but we have held this is so because the statute specifically focuses on what the report discusses. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 878 (Tex.2001). The same is true in a trial court's consideration of a motion for extension: the extension provision focuses only on the report itself. *See* TEX. CIV. PRAC. & REM.CODE § 74.351(c) (providing that a trial court may grant an extension if "elements of the report are found deficient"). Further, the expert report requirement is not a substitute for a trial on

the merits—just as a trial court should not consider the defendant's pleadings and other evidence when ruling on a motion to dismiss on adequacy grounds, the trial court should similarly refrain from considering these extraneous matters when considering a motion for an extension to cure. *See Palacios*, 46 S.W.3d at 878.

Even though the trial court should only consider the expert report when determining whether to grant an extension, that is not to say a claimant is only entitled to an extension when the report contains specific information or is not entitled to an extension when the report lacks certain information. The Legislature clearly contemplated that trial courts would grant extensions when reports contained varying degrees of deficiencies. *See* Tex. Civ. Prac. & Rem. Code § 74.351(c) (providing that a trial court may grant one thirty-day extension when "elements" of the report are deficient). Therefore, as long as a claimant has filed a report (as defined by the statute), the specific deficiencies of a report should not determine whether the trial court should grant an extension. Rather, a trial court should be able to determine, based on the initial report, if a claim warrants an extension—that is, whether a claim could potentially have merit if the report were cured. A report from a qualified health care professional stating a belief that a plaintiff has a claim against a defendant, even though elements of the report are deficient, should be sufficient

for a trial court to determine the curability of the report.[1]

As further evidence that a trial court need not consider more than the report itself, nothing in section 74.351 requires a trial court to hold a hearing before denying an extension to cure a deficient report and dismissing a case. *Compare id.* § 74.351(b)–(c) (requiring dismissal if an extension to cure a deficient report is not granted), *with* Tex.Rev.Civ. Stat. art. 4590i § 13.01(g) (requiring a court to hold a hearing before granting a single thirty-day extension for good cause under the former statute);[2] *see, e.g., Johnson v. Willens*, 286 S.W.3d 560, 565–66 (Tex.App.-Beaumont 2009, pet. filed) (trial court granted order dismissing case without holding a hearing). Had the Legislature intended for a trial court to consider more than the report when determining whether to grant an extension to cure, it could have required a hearing to allow a claimant to present additional evidence.

### III. Application

In this case, Wooten's expert report by R. Don Patman, M.D. was over nine single-spaced pages. The report contained Wooten's medical history, the applicable standard of care, and a numbered list of Dr. Samlowski's alleged standard-of-care breaches, including failing to perform a comprehensive diagnostic work-up and thereby failing to determine the extent of Wooten's illness. Dr. Patman concluded that Dr. Samlowski's actions constituted

---

1. Justice Medina contends this approach mirrors that of the court of appeals, and that it is unclear the manner in which a court will distinguish between deficient reports that are curable and those that are not. But this mischaracterizes my position—a court will be able to determine from the four corners of the report whether it is from a qualified health care professional stating a belief that the plaintiff has a claim against a defendant.

2. Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, sec. 13.01(g), 1995 Tex. Gen. Laws 985, 986, *amending* the Medical Liability and Insurance Improvement Act of Texas, 65th Leg., R.S., ch. 817, 1977 Tex. Gen. Laws 2039, *repealed by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884. Former article 4590i section 13.01 was replaced by Texas Civil Practice and Remedies Code section 74.351, as amended.

negligence and were the proximate causes of Wooten's developing multiple life-threatening complications. The report inferred that Dr. Samlowski performed an unnecessary surgery, delaying treating Wooten's condition. The report, however, did not contain an explanation of how Dr. Samlowski's actions caused Wooten's injuries and was, as Wooten now acknowledges, deficient. 282 S.W.3d at 90. But the report did not demonstrate, on its face, that it was incurable. To the contrary, it demonstrated that it had the potential to be cured since the report was from a qualified health care professional and explained a belief that Samlowski's actions caused Wooten's injuries. Nothing outside of this report would have aided in the trial court's determination that Wooten's report could have been cured. Therefore, I would hold the trial court abused its discretion in denying Wooten's motion for an extension to cure her report, and allow her the opportunity to attempt to cure her report.

### IV. Additional Considerations

Justice Medina and the dissent conclude that the trial court did not abuse its discretion in denying the thirty-day extension because Wooten failed to prove that the report would have been cured. But the provision allowing for an extension is not punitive—it says nothing about withholding an extension when a claimant has failed do something. Rather, the provision is curative, intending to give claimants an opportunity to save their claims from dismissal. While the Legislature, by enacting the TMLA, sought to "reduce excessive frequency and severity of health care liability claims," Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.11(b)(1), 2003 Tex. Gen. Laws 847, 884, it intended to "do so in a manner that will not unduly restrict a claimant's rights," *id.* § 10.11(b)(3); *Leland,* 257 S.W.3d at 208. "In enacting section 74.351, the Legislature struck a careful balance between eradicating frivolous claims and preserving meritorious ones...." *Leland,* 257 S.W.3d at 208. In order to preserve the highest number of meritorious claims, trial courts should err on the side of granting claimants' extensions to show the merits of their claims. The price of preserving a meritorious claim will be thirty days, compared to a much higher price of dismissal.

### V. Conclusion

Because Wooten filed an expert report from a qualified expert explaining a belief that Samlowski's actions caused Wooten's injuries, even though elements of the report were deficient, I would hold the trial court abused its discretion by denying her motion for an extension to cure. I join the Court's judgment remanding the case to the trial court.

Justice WAINWRIGHT, dissenting in part and concurring in the judgment.

The requirement to serve an expert report from a qualified health care expert on defendant health care providers within 120 days of filing suit is intended to cull out at an early stage of the litigation medical malpractice claims that have not been shown to have merit. The Texas Medical Liability Act instructs courts to dismiss such claims. TEX. CIV. PRAC. & REM.CODE § 74.351. At that stage, the claims that have been shown likely to have merit may proceed. *See Leland v. Brandal,* 257 S.W.3d 204, 208 (Tex.2008) (noting that section 74.351 strikes a balance between "eradicating frivolous claims and preserving meritorious ones"). The hurdle dividing the two is the expert report.

The Legislature established an expert report hurdle that should be cost and time efficient. *See In re McAllen Med. Cntr., Inc.,* 275 S.W.3d 458, 467 (Tex.2008). The

question in this case is how to define the characteristics of an inadequate expert report that nevertheless entitle a claimant to obtain a statutory extension to cure the report.

JUSTICE MEDINA attempts to erect a just standard under the applicable statute for reviewing trial court decisions to grant or deny extensions to cure expert reports. In his view, "generally a trial court should grant an extension when the deficient report can be cured within the thirty-day period the statute permits." 332 S.W.3d at 407. Unfortunately, this standard is neither cost nor time efficient. His opinion directs the trial court to consider matters beyond the four corners of the report but leaves undecided the limits on the scope of extraneous matter that a trial court may consider. Whether it's an attorney's busy schedule, the client's unavailability, the expert's mistake, or something else, the trial court must conduct a hearing on, and weigh the credibility of, such extraneous assertions. His opinion then requires the plaintiff to move the trial court to reconsider a denial of an extension with the option of filing a cured expert report, the sufficiency of which the trial court then ponders. More time passes. This procedure will often add to the litigation and raise the costs, extend the time, and undermine the purpose of the intended efficient hurdle. The statute contains no mention of extraneous evidence, additional delay, or additional hearings, and neither it nor the opinion place deadlines on completion of these new procedures.

In my view, for an extension to be considered, an expert report must address all of the elements required by statute to be in the report—duty, breach, and a causal relationship between the breach and the plaintiff's injury.[1] An expert report is:

[A] written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

TEX. CIV. PRAC. & REM.CODE § 74.351(r)(6). The Legislature determined that a medical malpractice claim supported by an expert report that satisfies subsection (r)(6) possesses the requisite merit to proceed beyond that hurdle. If such a report has not been served on the defendant health care provider within 120 days after the original petition is filed, on motion of the defendant the court "shall" dismiss the claim. *Id.* § 74.351(b). However, if the report fails to satisfy subsection (r)(6) "because elements of the report are found deficient," then the trial "court may grant one 30–day extension to the claimant in order to cure the deficiency." *Id.* § 74.351(c). The legislative requirement that elements of the expert report be found deficient as a condition to considering an extension presumes that the elements at least be included in the report. *See Ogletree v. Matthews*, 262 S.W.3d 316, 320 (Tex.2007) ("[A] deficient report differs from an absent report."); *Leland*, 257 S.W.3d at 207 ("The statute does not allow for an extension unless, and until, elements of a report are found deficient...."). Unless an expert report addresses all of the required elements, section 74.351(c) does not authorize a trial court to consider an extension. As we explained in *Walker v. Gutierrez*, a claimant's expert report that omits one or more of the statutorily required elements fails to be eligible for a grace period. 111 S.W.3d 56, 65 (Tex.2003) (interpreting the prede-

1. There is no challenge in this case to the expert's qualifications.

cessor statute—the Medical Liability and Insurance Improvement Act, TEX.REV.CIV. STAT. art. 4590i, § 13.01(r)(6), *repealed by* Act of June 2, 2003, 78th Leg., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884).[2]

I also question whether the standard for a court's determination of the adequacy of an expert report, a precondition to considering an extension, should be an abuse of discretion. In *American Transitional Care Centers of Texas, Inc. v. Palacios*, we held that to be the standard. 46 S.W.3d 873 (Tex.2001). But *Palacios* relied in large part on the statement in the predecessor statute, article 4590i, § 13.01(e), that upon failure of the report to satisfy statutory requirements the court must "enter an order as sanctions." *Id.* at 877. In the amended language of the Chapter 74 recodification of article 4590i, if an expert report is not timely served, the trial court shall "enter an order" that dismisses the claim. TEX. CIV. PRAC. & REM.CODE § 74.351(b). The characterization that such an order is a "sanction" has been removed from the text of the statute. Along with it, *Palacios*'s proper and supporting rationale that "[s]anctions are generally reviewed under an abuse-of-discretion standard" was removed as well. *See* 46 S.W.3d at 877.

Appellate review of an expert report is analogous to review of a summary judg-ment. Appellate courts review the same pieces of paper that the trial court reviews. Personal observations of human behavior that appropriately suggest deference to certain trial court rulings in proceedings with live witnesses do not arise when the trial court interprets a document. *See Otis Elevator Co. v. Parmelee*, 850 S.W.2d 179, 181 (Tex.1993) ("[Where] the trial court heard no evidence but expressly based its decision on the papers filed and the argument of counsel . . . there are no factual resolutions to presume in the trial court's favor."). I would suggest a de novo standard of review on appeal for rulings on the adequacy of expert reports under Chapter 74. *Cf. Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex.2003) (reviewing a trial court's grant of summary judgment de novo); *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650–51 (Tex.1999) (reviewing a trial court's legal conclusions on an unambiguous contract de novo).

JUSTICE JOHNSON argues that the word "may" in section 74.351(c) provides a trial court discretion in granting or denying an extension. But the Code Construction Act also instructs that "may" could also denote a legislative grant of power to act. TEX. GOV'T CODE § 311.016(1) (" 'May' creates discretionary authority *or grants permis-*

---

**2.** While a trial court's consideration of a motion to dismiss and a motion for an extension are inseparable, *see Ogletree*, 262 S.W.3d at 321, the statutory grounds for dismissal of a claim versus granting an extension to cure an expert report are, to some degree, distinct. Section 74.351(*l*) instructs that a claim for which the corresponding expert report does not represent a good faith effort to provide an adequate expert report "shall" be dismissed on proper motion. TEX. CIV. PRAC. & REM CODE § 74.351(*l*). If that mandate governed the entirety of section 74.351, then the authorization to grant an extension in section 74.351(c) would be meaningless. *See Ogletree*, 262 S.W.3d at 321. Further, "good faith" is a consideration in dismissal of claims but not in extensions to cure the report. I agree with JUSTICE MEDINA's opinion that "good faith" is not a consideration in the analysis of an extension under section 74.351(c). 332 S.W.3d at 409. "Good faith" is important to determining the adequacy of an expert report. *See* TEX. CIV. PRAC. & REM.CODE § 74.351(*l*). The term is in the text of section 74.351(*l*) but not in the text of section 74.351(c). It therefore appears that the grounds for considering the dismissal of a report versus the extension of time to serve an adequate report are independent, except for the initial determination that the report is inadequate.

*sion or a power.*" (emphasis added)). If courts are interpreting a document and are not issuing a sanction, the logic for an abuse of discretion standard falls away. JUSTICE MEDINA expands the extension analysis to include extraneous evidence, both before and after the trial court's decision, laying the groundwork for his argument for an abuse of discretion standard. Besides the increased litigation expense, such a standard will also result in disparate rulings in different courts addressing materially indistinct expert reports. In these circumstances, a de novo standard would promote consistency and predictability across the state.

Applying a de novo standard of review to this case, I would reverse the trial court's ruling because although elements of the expert report were found deficient, the report addressed each of the elements required by the statute. *See* TEX. CIV. PRAC. & REM.CODE § 74.351(c); *Walker*, 111 S.W.3d at 65. I therefore concur in the Court's judgment, for the reasons explained herein. I also join Parts I and II.B of JUSTICE GUZMAN's concurrence.

Justice JOHNSON, joined by Justice GREEN and Justice WILLETT, dissenting.

Texas Civil Practice and Remedies Code section 74.351 provides that a trial court must dismiss a health care liability suit unless the claimant serves an expert report within 120 days after filing suit. It also provides that if a report is served timely but is deficient, the trial court "may" grant one thirty-day extension for the claimant to cure the report.

I agree with Justice Medina that the trial court did not abuse the discretion afforded it by statute in denying Wooten's motion for an extension. I do not agree with him to the extent he indicates that if Wooten had served a cured report and

motion for reconsideration within thirty days after the trial court denied her motion for extension, those actions and the cured report could be considered in determining if the trial court abused its discretion by denying the motion for extension. The trial court's ruling on a motion for reconsideration or motion for new trial would have been reviewable for abuse of discretion had Wooten filed either of them, which she did not. But events occurring after a trial court's ruling on a motion should not be considered in determining whether the ruling was an abuse of discretion.

The Court's action in affirming and modifying the court of appeals' judgment results in the reversal of an errorless trial court judgment. I would reverse the court of appeals' judgment and affirm that of the trial court. Because the Court does not, I dissent.

## I. Background

After Carol Wooten sued Dr. Samlowski, alleging that he negligently treated her, she timely filed and served a report by R. Don Patman, M.D. *See* TEX. CIV. PRAC. & REM.CODE § 74.351(a) (requiring a healthcare liability claimant to file an expert report within 120 days of filing suit). Dr. Samlowski timely objected to the report, asserting that the report was conclusory as to the causal relationship between his care and the damages Wooten claimed. *See id.* In her response to the motion, Wooten essentially repeated part of the report's contents, claimed the report met the requirements of section 74.351, and requested a thirty-day extension to cure any inadequacies the trial court found in the report. *See id.* § 74.351(c). Dr. Samlowski then filed a motion to dismiss Wooten's suit because the report was deficient. *See id.* § 74.531(b).

After a hearing where no evidence was introduced, the trial court determined that Dr. Patman's report did not represent a good faith effort to comply with the expert report requirements of section 74.351 and granted Dr. Samlowski's motion to dismiss. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 879 (Tex.2001) (noting that a report that does not set out elements required by the statute or states those elements in conclusory fashion does not constitute a good faith effort to comply with the statute). Without taking any further action in the trial court, Wooten appealed.

## II. Discussion

### A. Expert Report

The claimant in a health care liability suit must serve each defendant with an expert report within 120 days of filing suit. TEX. CIV. PRAC. & REM.CODE § 74.351(a).[1] If an expert report is not timely served, the trial court "shall" dismiss the claim. *Id.* § 74.351(b). The statutory directive to dismiss applies to both absent and deficient reports. *See id.* § 74.351(c); *Lewis v. Funderburk*, 253 S.W.3d 204, 207 (Tex. 2008). However, if an expert report has not been timely served because elements of the report are found deficient, the court "may" grant one thirty-day extension to allow the claimant to cure the deficiency. TEX. CIV. PRAC. & REM.CODE § 74.351(c).

### B. Standard of Review

As Justice Medina discusses, the standard by which the trial court's order is reviewed is abuse of discretion. *See* 332 S.W.3d at 418 n. 2. And when a trial court order is reviewed for abuse of discretion, the order necessarily is reviewed based on the record as it was at the time the trial court made its ruling. *See Univ. of Tex. v. Morris*, 162 Tex. 60, 344 S.W.2d 426, 429 (1961); *Stephens County v. J. N. McCammon, Inc.*, 122 Tex. 148, 52 S.W.2d 53, 55

1. In relevant part, Texas Civil Practice and Remedies Code section 74.351 reads as follows:

(a) In a health care liability claim, a claimant shall, not later than the 120th day after the date the original petition was filed, serve on each party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted. The date for serving the report may be extended by written agreement of the affected parties. Each defendant physician or health care provider whose conduct is implicated in a report must file and serve any objection to the sufficiency of the report not later than the 21st day after the date it was served, failing which all objections are waived.

(b) If, as to a defendant physician or health care provider, an expert report has not been served within the period specified by subsection (a), the court, on the motion of the affected physician or health care provider, shall, subject to subsection (c), enter an order that:

(1) awards to the affected physician or health care provider reasonable attorney's fees and costs of court incurred by the physician or health care provider; and

(2) dismisses the claim with respect to the physician or health care provider, with prejudice to the refiling of the claim.

(c) If an expert report has not been served within the period specified by subsection (a) because elements of the report are found deficient, the court may grant one 30-day extension to the claimant in order to cure the deficiency. If the claimant does not receive notice of the court's ruling granting the extension until after the 120-day deadline has passed, then the 30-day extension shall run from the date the plaintiff first received the notice.

. . . .

(*l*) A court shall grant a motion challenging the adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report in subsection (r)(6).

(1932) ("When an appellate court is called upon to revise the ruling of a trial court, it must do so upon the record before that court when such ruling was made."); *Beard v. Comm'n for Lawyer Discipline,* 279 S.W.3d 895, 902 (Tex.App.-Dallas 2009, pet. denied); *Methodist Hosps. of Dallas v. Tall,* 972 S.W.2d 894, 898 (Tex.App.-Corpus Christi 1998, no pet.) ("It is axiomatic that an appellate court reviews actions of a trial court based on the materials before the trial court at the time it acted.").

## C. Abuse of Discretion and Section 74.351

The Legislature has provided that in statutes "unless the context in which the word or phrase appears necessarily requires a different construction or unless a different construction is expressly provided by statute ... '[m]ay' creates discretionary authority or grants permission or a power" and "'[s]hall' imposes a duty." TEX. GOV'T CODE § 311.016. The parties do not contend, and the context does not indicate, that in section 74.351 either "shall" or "may" should be given different meanings than those prescribed by section 311.016. *See FKM P'ship, Ltd. v. Bd. of Regents of Univ. of Houston Sys.,* 255 S.W.3d 619, 633 (Tex.2008); *see also Fleming Foods of Tex., Inc. v. Rylander,* 6 S.W.3d 278, 284 (Tex.1999). Thus, if the trial court properly determines that an expert report is deficient, then the statutory language not only authorizes dismissal of the suit, it imposes a duty on the trial court to dismiss it. TEX. CIV. PRAC. & REM.CODE § 74.351(b)(2). That duty, however, is subject to the permissive power afforded in the same section for the trial court to grant an extension. *Id.* § 74.351(c).

The situation is similar to the one the Court faced in *In re Pirelli Tire, L.L.C.,* 247 S.W.3d 670 (Tex.2007). There, the Court was called upon to construe a statute providing that if a trial court "finds that in the interest of justice a claim or action to which this section applies would be more properly heard in a forum outside this state, the court *may* decline to exercise jurisdiction." *See* TEX. CIV. PRAC. & REM.CODE § 71.051(a) (emphasis added), *repealed by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 3.09 2003, Tex. Gen. Laws 855. We had previously held that section 71.031 of the Civil Practice and Remedies Code afforded non-residents an absolute right to try cases such as the one filed against Pirelli in Texas courts. *Dow Chem. Co. v. Alfaro,* 786 S.W.2d 674, 676, 678 (Tex.1990). Thus, the issue before us in *In re Pirelli* was whether the trial court abused its discretion by failing to grant a forum non conveniens motion to dismiss pursuant to the permission granted in section 71.051, despite section 71.031's effective mandate that the trial court exercise jurisdiction over the case. We held that the trial court abused its discretion. We explained that the purposes of the forum non conveniens doctrine informed the guiding principles against which we measured the trial court's exercise of discretion. *In re Pirelli,* 247 S.W.3d at 675–76.

In construing the trial court's authority under the permissive statute, the Court relied, in part, on *In re Van Waters & Rogers, Inc.,* 145 S.W.3d 203 (Tex.2004), where the Court concluded mandamus relief was available because the trial court abused its discretion by consolidating twenty cases for trial even though the rule governing consolidations was permissive in nature. *See* TEX.R. CIV. P. 174(a). The Court looked to the principles underlying the rule and said that in *Van Waters* "the trial court's consolidation order did not comport with the principles we have articulated that must guide a court's exercise of discretion under the rule." *In re Pirelli,* 247 S.W.3d at 676.

Similarly, in *In re Ethyl Corp.*, 975 S.W.2d 606, 610 (Tex.1998), the Court considered the permissive language of Texas Rule of Civil Procedure 174(b), which provides that a trial court "in furtherance of convenience or to avoid prejudice may order a separate trial" of claims or issues. *See* Tex.R. Evid. 174(b). The Court referenced with approval *Womack v. Berry,* 156 Tex. 44, 291 S.W.2d 677 (1956) and the principle set out there: the permissive "may" does not afford a trial court unlimited discretion, but rather requires the exercise of sound discretion based on all the circumstances of the particular case. *Ethyl Corp.,* 975 S.W.2d at 610.

Just as the Court determined that the trial court's discretion was not unlimited in *In re Pirelli* and *Womack,* a trial court's discretion should not be unlimited pursuant to the permissive "may" in section 74.351(c). Section 74.351(c) requires the court to exercise sound discretion under all the facts and circumstances of the case, including the language and purposes of Chapter 74. *See Ethyl Corp.,* 975 S.W.2d at 610.

### D. Factors for a Trial Court to Consider

Wooten argues that if a report such as Dr. Patman's is deficient, the trial court should not be limited to the report in deciding whether to grant an extension. I agree.

When a defendant challenges the adequacy of an expert report, the trial court is to determine whether the report is adequate based only upon the contents of the report. *See Palacios,* 46 S.W.3d at 878. As we noted in *Palacios,* the prior statute focused on the contents of the report with regard to the trial court's determination of whether the report was an objective good faith effort. *Id.* at 878. The current statute also focuses on the report's contents.

*See* Tex. Civ. Prac. & Rem.Code § 74.351(*l*) (stating that a motion challenging the adequacy of a report shall be granted only if "it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply" with the statutory expert report requirements). In contrast, section 74.351 is not so focused. It places no limitation on what the court may consider in exercising its discretion:

> (c) If an expert report has not been served within the period specified by subsection (a) because elements of the report are found deficient, the court may grant one 30–day extension to the claimant in order to cure the deficiency.

*Id.* § 74.351(c). So, although the deficient report's content is one factor the trial court must consider in determining if it will grant an extension to cure, the court should not be limited to considering only the content of the report. *See id.; Womack,* 291 S.W.2d at 683.

The statute provides guidance as to what factors a trial court may consider when determining whether to grant an extension to cure. Part of the purpose of requiring an expert report in health care liability suits is to remove unwarranted delays and the attendant litigation expense involved in disposing of non-meritorious claims. *See In re McAllen Med. Ctr., Inc.,* 275 S.W.3d 458, 467 (Tex.2008). Hard-and-fast deadlines for both serving and objecting to reports advance that purpose by accelerating the disposition of such cases. *See Intracare Hosp. N. v. Campbell,* 222 S.W.3d 790, 797 (Tex.App.-Houston [1st Dist.] 2007, no pet.); *Mokkala v. Mead,* 178 S.W.3d 66, 76 (Tex.App.-Houston [14th Dist.] 2005, pet. denied). From the Legislature's establishing of a deadline for serving a report and directing that the suit shall be dismissed unless the deadline is met or the trial court grants an extension "in order *to cure* the deficiency," at

least three criteria for the granting of an extension of time can be distilled. *See* TEX. CIV. PRAC. & REM.CODE § 74.351(c) (emphasis added). First, the deficient report must qualify as a report, albeit a deficient one. Second, the deficient report must have been served within the statutorily-specified time limit. Third, the deficient report will be cured during the extension if one is granted.

In many, if not most, instances the determination of whether a report will be cured if an extension is granted will be a fact question. And a trial court generally will not have abused its discretion by denying a motion for an extension if there is conflicting evidence on the matter. *See Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992) ("With respect to resolution of factual issues or matters committed to the trial court's discretion, for example, the reviewing court may not substitute its judgment for that of the trial court."); *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978) (noting that an abuse of discretion does not exist where the trial court bases its decision on conflicting evidence). So, the trial court's discretionary refusal to grant an extension will not ordinarily be an abuse of discretion unless the record conclusively shows that the report would have been timely cured if an extension had been granted.

The import of Justice Medina's opinion is that a cured report served within thirty days after the denial of an extension can be considered in determining whether the trial court abused its discretion in denying the extension. Because a trial court's actions are reviewed based on what was before the court at the time it ruled, I disagree. *See Univ. of Tex.*, 344 S.W.2d at 429; *Stephens County*, 52 S.W.2d at 55. Which is not to say that if a claimant such as Wooten were to make a proper record on a motion to reconsider or motion for new trial, an appellate court could decline to fully review the trial court's action on the motion. For example, if a trial court denied an extension to a claimant whose timely-served report was deficient, then the claimant timely filed a motion for new trial or motion to reconsider and served a cured report, the trial court's ruling on the motion would be reviewable on appeal. *See In re R.R.*, 209 S.W.3d 112, 114 (Tex. 2006) ("We review a trial court's denial of a motion for new trial for abuse of discretion."); *Simon v. York Crane & Rigging Co., Inc.*, 739 S.W.2d 793, 795 (Tex.1987) (concluding that the decision whether to grant a motion for new trial is addressed to the trial court's discretion, and the court's ruling will not be disturbed on appeal absent a showing of an abuse of discretion). And that review would necessarily be in light of the Legislature's purpose to have non-meritorious cases promptly disposed of while allowing meritorious cases to proceed.

### E. Application

Wooten timely served Dr. Patman's report, but there was no evidence before the trial court when it ruled on the motions of Dr. Samlowski and Wooten to prove that the report would have been cured if a thirty-day extension had been granted. Dr. Samlowski's motion to dismiss was heard on August 28, 2007, over three months after he filed his objection to Dr. Patman's report. As relevant to this matter, the record before the trial court at the hearing consisted of Dr. Patman's report dated April 15, 2007 and served on April 26, 2007, Dr. Samlowski's objection, and Wooten's response to the objection. Wooten's response asserted the report was sufficient and requested an extension of time to cure the report if it was not. Yet there was no evidence in the record about whether the report could or would be cured if an extension were granted. Cer-

tainly, Wooten did not conclusively prove that the report would be cured by offering evidence such as a supplemental report actually curing the deficiency in Dr. Patman's report. Thus, she has not shown that the trial court abused its discretion by denying her request for an extension.

### III. Remand

Even though a majority of the Court is not of the opinion that the trial court abused its discretion or otherwise committed error by dismissing Wooten's case, the Court nevertheless determines that remand for further proceedings is appropriate. I disagree with that decision for two reasons.

First, our rules provide that a judgment may not be reversed on appeal on the ground that a trial court committed an error of law unless that error (1) probably caused the rendition of an improper judgment, or (2) probably prevented the appealing party from properly presenting the case to the appellate courts. *See* TEX. R.APP. P. 44.1, 61.1; *In re Columbia Med. Ctr. of Las Colinas, Subsidiary, L.P.,* 290 S.W.3d 204, 211 (Tex.2009) ("[A]ppellate courts are limited to the issues urged and record presented by the parties and ... are specifically limited to reversing judgments only for errors that probably resulted in entry of an improper judgment or precluded a party from properly presenting its case on appeal."); *Pat Baker Co., Inc. v. Wilson,* 971 S.W.2d 447, 450 (Tex. 1998) ("It is axiomatic that an appellate court cannot reverse a trial court's judgment absent properly assigned error."); *Sears, Roebuck & Co. v. Marquez,* 628 S.W.2d 772, 773 (Tex.1982) (noting that it is not within the power of an appellate court to reverse a judgment absent error); *Barnum v. Lopez,* 471 S.W.2d 567, 568 (Tex.1971) (noting that an appellate court may only reverse a case for error commit-

ted by the trial court). Neither of those situations exist here because the trial court did not commit error. The substance of the Court's action today is to endorse an erroneous court of appeals judgment that reversed an errorless trial court judgment. The Court then, in effect, grants a new trial even though the rules of procedure adopted by this Court vest such discretion in trial courts, *see* TEX.R. CIV. P. 320, not appellate courts. *See* TEX.R.APP. P. 44.1, 61.1.

Second, when a litigant is faced with a motion to dismiss because of some defect in her pleadings or filings, there is nothing procedurally new about her filing a corrected pleading or, in this case, a corrected report, before seeking relief from the trial court. *Cf. Leland v. Brandal,* 257 S.W.3d 204, 205 (Tex.2008) (discussing a supplemental expert report served in response to defendants' objections). Nor is there anything new about a litigant whose case has been dismissed seeking a new trial or moving the trial court to reconsider its dismissal ruling and filing post-dismissal affidavits or presenting evidence in support of his or her motion. *See, e.g.,* TEX.R. CIV. P. 320, 329b.

The "procedure ... outlined today" by Justice Medina is not new, *see* 332 S.W.3d at 412; it encompasses well-known procedural devices. Wooten was not ambushed; she knew exactly what Dr. Samlowski's objection was and had adequate opportunity to show the trial court that the alleged defect in Dr. Patman's report was curable—if it was. She failed to either file a supplemental report attempting to address Dr. Samlowski's objection or present other such evidence at the hearing. Nor did she seek relief by filing a post-dismissal motion for reconsideration or motion for new trial, serving a supplemental report or offering other evidence to demonstrate that Dr.

Patman's report was curable, and requesting a trial court ruling.

In sum, Wooten did not avail herself of standard procedural avenues. She does not present a record that supports reversing the trial court's judgment.

### IV. Conclusion

The court of appeals' judgment is erroneous because it reverses an error-free trial court judgment. I would reverse the judgment of the court of appeals and affirm that of the trial court.